IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| McCABE HAMILTON & RENNY, COMPANY, LTD., | ) ) ) | CIVIL NO. 08-00080 JMS/BMK |
| Plaintiff, | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |
| vs. | ) ) | WITH LEAVE TO AMEND |
| MATSON TERMINALS, INC., dba OAHU STEVEDORING, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**

**I.  INTRODUCTION**

Plaintiff McCabe Hamilton & Renny, Company, Ltd. ("Plaintiff")

alleges that Defendant Matson Terminals, Inc., dba Oahu Stevedoring

("Defendant") is engaging in predatory conduct by trying to hire 108 of Plaintiff's

longshore employees.  Plaintiff's Second Amended Complaint ("SAC") alleges

five claims against Defendant, including violations of § 2 of the Sherman Act for

monopolization and attempted monopolization (Counts I & II), tortious

interference with prospective contract and prospective economic advantage (Count

III), tortious interference with employment relations (Count IV), and unfair

competition (Count V).  Currently before the court is Defendant's Motion to

Dismiss Plaintiff's SAC.  For the following reasons, the court GRANTS

Defendant's Motion to Dismiss the federal antitrust claims with leave to amend,

and declines jurisdiction over the state law claims.

## II.  <u>BACKGROUND</u>

**A.     Factual Background**

As alleged in the SAC, Defendant is a wholly owned subsidiary of

Matson Navigation, Inc., ("Matson Navigation") and provides stevedoring (*i.e.*,

loading and unloading of vessels) and related services on Oahu.  SAC ¶¶ 7, 11.

The SAC asserts that Defendant possesses monopoly power in the Oahu

stevedoring market because it provides an enormous amount of stevedore services

to Matson Navigation and other shipping companies, and is able to control output

and price.  *Id.* ¶ 13.  Plaintiff also provides stevedoring and related services, and is

the only independently-owned provider of stevedoring services on Oahu.  *Id.* ¶ 6.

The basis of Plaintiff's claims is that Defendant is attempting to hire

108 longshoremen from Plaintiff, and has said that it expects to hire quite a few

more of Plaintiff's employees.  *Id.* ¶ 9.  The SAC alleges that Defendant is trying

to hire Plaintiff's employees with intent to harm Plaintiff; Defendant will not use

all of these employees for its own business, and is hiring them to prevent McCabe

2

from effectively competing with Defendant. *Id.* ¶ 15. Defendant has no valid business reasons for trying to hire Plaintiff's employees, and its purported reasons such as controlling costs, avoiding conflicting rules and practices, and making Plaintiff's employees feel better, are invalid and wholly pretextual. *Id.* ¶ 18. Indeed, Defendant will at many times (for about 40% of the time that it operates) not use all of the 108 longshoremen that it is trying to hire from Plaintiff. *Id.* ¶ 19.

The SAC asserts that Defendant's hiring of Plaintiff's employees will have a variety of results. First, stevedoring services on Oahu for both Defendant and businesses who use Oahu's harbors will be significantly disrupted. *Id.* ¶ 20. Further, Defendant will most often have the only extra longshoremen that may be provided to shippers, and will be free to decide what longshoremen it elects to give them. *Id.* ¶ 21. The SAC also alleges that "[r]ivals will be barred from entering the stevedoring services market on Oahu and existing competitors lack the capacity to expand their output in the market by supplying the longshoremen they already employ or by hiring any more longshoremen under the ILWU collective bargaining agreement." *Id.* Finally, Defendant will be able to monopolize and/or start to monopolize the Oahu stevedoring market by being able to control output and prices. *Id.* ¶¶ 23, 26.

3

In support of Plaintiff's state law claims, the SAC alleges that Defendant's use of its monopoly power in the stevedoring market to take the majority of Plaintiff's workforce constitutes unfair competition. *Id.* ¶ 37. The SAC further alleges that Plaintiff has existing and prospective contracts and economic advantages with its customers, with which Defendant is purposely interfering without justification. *Id.* ¶¶ 29-30. Finally, the SAC alleges that Plaintiff maintains a contractual relationship between and among its employees and their collective bargaining representative, with which Defendant is purposely seeking to induce nonperformance and intentionally interfering. *Id.* ¶¶ 32-35.

**B.     Procedural Background**

On February 21, 2008, Plaintiff filed a Complaint alleging federal antitrust and state law violations, and a Motion for Temporary Restraining Order to prevent Defendant and Matson Navigation from hiring Plaintiff's employees. During a February 22, 2008 status conference, the parties agreed to maintain the status quo (*i.e.*, that Defendant and Matson Navigation would not hire any of Plaintiff's employees), to allow Plaintiff to file, and the court to hear, a motion for preliminary injunction.[1]

---

[1] Plaintiff subsequently filed its Motion for Preliminary Injunction on March 3, 2008. Because the court granted Defendant and Matson Navigation's Motion to Dismiss the First

(continued...)

4

On March 5, 2008, Plaintiff filed its First Amended Complaint ("FAC") alleging violations of the Sherman Act, § 2, and Clayton Act, § 7, unfair competition, and tortious interference with actual and/or prospective contractual relations with Plaintiff's employees and shipping customers.  The thrust of the FAC's claims against Defendant and Matson Terminals was that they were attempting to acquire Plaintiff by hiring Plaintiff's employees.

On March 6, 2008, Defendant and Matson Navigation filed a Motion to Dismiss Plaintiff's FAC.  During an April 2, 2008 hearing, the court dismissed Plaintiff's federal antitrust claims, and issued a written order on April 9, 2008 ("April 9, 2008 Order").  The April 9, 2008 Order explained that the FAC failed to allege an antitrust injury, and granted Plaintiff leave to amend.  *See generally McCabe Hamilton & Renny Co. v. Matson Navigation Co.*, 2008 WL 2233740 (D. Haw. Apr. 9, 2008).

On April 10, 2008, Plaintiff filed its SAC.  On April 21, 2008, Defendant filed a Motion to Dismiss Plaintiff's SAC.  On May 21, 2008, Plaintiff filed an Opposition, and Defendant filed a Reply on May 29, 2008.  A hearing was held on June 9, 2008.

---

[1](...continued)
Amended Complaint, the court did not address Plaintiff's Motion for Preliminary Injunction.

5

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  When reviewing a Rule 12(b)(6) motion, a court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).  "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'"  *Williams ex rel. Tabiu v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).[2] "'Factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (*quoting Bell Atlantic*, 127 S. Ct. at 1965).

---

[2] In its April 9, 2008 Order, the court declined to address how *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), affects the Rule 12(b)(6) standard of review due to lack of guidance provided by the Ninth Circuit and because such analysis was not necessary to the court's determination of the issues presented.  *See McCabe Hamilton & Renny Co. v. Matson Navigation Co.*, 2008 WL 2233740, at *2 n.2 (D. Haw. Apr. 9, 2008) (discussing cases).  More recently, the Ninth Circuit has adopted and applied *Bell Atlantic*'s plausibility standard to various types of claims beyond those specifically addressed in *Bell Atlantic*.  *See, e.g., Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1094 (9th Cir. 2008); *Williams ex rel. Tabiu v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *SFPP, L.P. v. Union Pac. R. Co.*, 2008 WL 1776473, at *1 (9th Cir. Apr. 18, 2008); *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1066 (9th Cir. 2008).  The court therefore applies the *Bell Atlantic* standard here.

This is not to say, however, that a plaintiff must provide a detailed statement of its case.  A complaint "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson*, 127 S. Ct. at 2200 (*quoting Bell Atlantic*, 127 S. Ct. at 1964); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) ("To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" (*quoting Bell Atlantic*, 127 S. Ct. at 1974)).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic*, 127 S. Ct. at 1959-60 (explaining that the statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

## IV.  DISCUSSION

### A.    Plaintiff's Federal Antitrust Claims

Defendant seeks dismissal of Plaintiff's federal antitrust claims alleging violations of § 2 of the Sherman Act for both monopolization (Count I)

and attempted monopolization (Count II).  Section 2 of the Sherman Act, 15

U.S.C. § 2, provides that "[e]very person who shall monopolize, or attempt to

monopolize, or combine or conspire with any other persons, to monopolize any

part of the trade or commerce . . . shall be deemed guilty of a felony. . . ."

> "'In order to state a claim for monopolization under Section 2 of the

Sherman Act, a plaintiff must prove: (1) possession of monopoly power in the

relevant market; (2) willful acquisition or maintenance of that power; and (3)

causal antitrust injury.'"  *SmileCare Dental Group v. Delta Dental Plan of Cal.,*

*Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (*quoting Pac. Express, Inc. v. United*

*Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992)).  To state a claim for attempted

monopolization, a plaintiff must prove the following four elements: "(1) specific

intent to control prices or destroy competition; (2) predatory or anticompetitive

conduct directed at accomplishing that purpose; (3) a dangerous probability of

achieving 'monopoly power' and (4) casual antitrust injury."  *Amarel v. Connell*,

102 F.3d 1494, 1521 (9th Cir. 1996) (*citing Rebel Oil Co. v. Atl. Richfield Co.*, 51

F.3d 1421, 1432-33 (9th Cir. 1995)).

*///*

*///*

*///*

Defendant argues that the court should dismiss Counts I and II because Plaintiff lacks antitrust injury,[3] and has failed to meet its Rule 12(b)(6) obligations in alleging anticompetitive conduct, relevant market, monopoly power, dangerous probability of achieving monopoly power, and specific intent to monopolize.  Below, the court addresses each of these arguments, and finds that the SAC's federal antitrust claims should be dismissed with leave to amend.

## 1.    *Antitrust Injury*

Antitrust injury is a necessary element of both of Plaintiff's federal antitrust claims.  In general, antitrust injury "depends less on the plaintiff's proof than on the logic of its complaint and its theory of injury[,]" and is "well-suited to prediscovery disposition."  Areeda & Hovenkamp, Antitrust Law, ¶ 337d (2007). The April 9, 2008 Order extensively discussed antitrust injury as applied to the FAC's theory of violation that Defendant and Matson Navigation were attempting to acquire McCabe.  The April 9, 2008 Order found that Plaintiff could not allege antitrust injury under this acquisition theory, but granted Plaintiff leave to amend to allege antitrust claims based on predatory hiring.  The court therefore once again addresses antitrust injury, but within this new context.

---

[3] As explained in the April 9, 2008 Order, "antitrust injury" is a necessary element of "antitrust standing."  *See McCabe Hamilton & Renny Co.*, 2008 WL 2233740, at *3.

Antitrust injury is defined as "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1007-08 (9th Cir. 2003) (*quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). "If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se.*" *Id.* at 1008.

The elements of antitrust injury include: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). A fifth requirement includes that "the injured party be a participant in the same market as the alleged malefactors," *i.e.*, "the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Glen Holly Entm't, Inc.*, 343 F.3d at 1008 (citation and quotation signals omitted).

None of the parties has cited, and the court could not find, any cases discussing antitrust injury where the plaintiff is proceeding under a theory of

predatory hiring.[4]  The court is nonetheless guided by the broad principle that ""[w]hen defendants engage in predatory pricing or other anticompetitive acts in an attempt to gain a monopoly, the competitor who is being driven out of the market is the party with standing."" *Amarel*, 102 F.3d at 1509 (*quoting In re Air Passenger Computer Reservation Sys.*, 727 F. Supp. 564, 568-69 (C.D. Cal. 1989)).  "Standing is clear and seldom challenged when the plaintiff alleges that its rival engaged in an exclusionary practice designed to rid the market of the plaintiff, to preclude its entry or raise its costs, so that the defendant could maintain or create a monopoly."  Areeda & Hovenkamp, at ¶ 348d.  As explained in the analogous case of predator pricing, "[a]n important rationale for condemning predatory pricing 'is to protect competition from improper destruction.  The injured competitor fits within that rationale and therefore suffers antitrust injury.'"  *Amarel*, 102 F.3d at 1508 (*quoting* Areeda & Hovenkamp, at ¶ 348d).

---

[4]  Defendant cites to *Agency Development, Inc. v. Med America Insurance Co.*, 310 F. Supp. 2d 538 (W.D.N.Y.), as addressing this element.  *Agency Development* did not address whether a plaintiff can *allege* an antitrust injury, and instead found that summary judgment should be granted because all that the plaintiff had *shown* is harm by a competitor, not harm to competition.  *Agency Dev., Inc.*, 310 F. Supp. 2d at 545.  For purposes of this motion, the court accepts the allegations of the SAC as true, and as discussed below, finds that it alleges harm to competition.

Applying these principles, the court finds that Plaintiff's predatory hiring theory -- the attempt to hire 108 longshoremen from Plaintiff solely to harm Plaintiff and to not help Defendant -- satisfies the antitrust injury requirement.  As discussed in more detail in section (IV)(A)(2), a plaintiff may base a federal antitrust violation on predatory hiring, and the SAC alleges anticompetitive conduct.  *See Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256, 1258 (9th Cir. 1990) (explaining ways of proving predatory hiring).  The SAC further alleges that Plaintiff will be injured both by losing these employees and its inability to compete with Defendant.  SAC ¶ 15.  This latter injury -- the inability to compete with Defendant and hence, the lessening of competition -- flows from Defendant's unlawful predatory hiring.  *See Amarel*, 102 F.3d at 1509. This resulting lessening of competition is precisely the type of injury that the antitrust laws were intended to prevent.  *See Brunswick Corp.*, 429 U.S. at 489 n.14 ("[C]ompetitors may be able to prove antitrust injury before they actually are driven from the market and competition is thereby lessened.").  Finally, unlike the FAC, the SAC appears to allege that Plaintiff and Defendant are competitors.  *See* SAC ¶ 15 (stating that Defendant's acts will "prevent [Plaintiff] from effectively

12

competing with [Defendant]").[5]  Thus, Plaintiff, as a competitor of Defendant, has

standing to raise this claim and protect competition from destruction through

Defendant's improper acts.

Defendant argues that Plaintiff's injury -- losing its employees and

inability to compete with Defendant -- is merely injury to Plaintiff (that is, injury

in fact) and is thus insufficient to establish antitrust injury.  Def.'s Br. 8.

Defendant further argues an absence of antitrust injury because Plaintiff's alleged

injury -- the inability to carry on its business -- does not flow from any of

Defendant's alleged anticompetitive conduct, but rather itself would cause the

resulting lessening in competition.  Def.'s Reply 3.  The court disagrees with

Defendant's characterization of both Plaintiff's injury and Defendant's

anticompetitive conduct.

Plaintiff will no doubt be harmed by losing its employees, and the

court agrees that this injury resulting by loss of employees on its own does not

necessarily "flow[] from an *anticompetitive* aspect of the defendant's behavior."

*See Glen Holly Entm't, Inc.*, 343 F.3d at 1008.  The SAC also alleges, however,

---

[5] In comparison, the FAC alleged that Defendant "provides stevedoring and related services but not in direct competition with McCabe on Oahu."  FAC ¶ 7.  Because the court dismissed the FAC, Plaintiff is not judicially estopped from alleging a contrary position.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." (citations omitted)).

that Defendant's hiring of Plaintiff's employees will prevent Plaintiff from competing with Defendant, hence lessening competition.  In other words, this lessening of competition is a downstream effect of Defendant's hiring of Plaintiff's employees.  Accordingly, unlike Plaintiff's FAC acquisition antitrust theory where Plaintiff alleged a lack of direct competition, the court finds that the SAC alleges antitrust injury.

### 2.    *Anticompetitive Conduct*

Anticompetitive conduct is a necessary element for both of Plaintiff's § 2 Sherman Act claims.  Predatory hiring, the anticompetitive conduct asserted in the SAC, "occurs when talent is acquired not for purposes of using that talent but for purposes of denying it to a competitor."  *Universal Analytics, Inc.*, 914 F.2d at 1258.  This theory may be established in two ways: by "showing the hiring was made with such predatory intent, *i.e.*, to harm the competition without helping the monopolist, or showing a clear nonuse in fact."  *Id.*

The SAC alleges that Defendant's attempt to hire 108 longshoremen from Plaintiff is done solely to harm Plaintiff and without helping Defendant in any legitimate way.  SAC ¶ 15.  The SAC further alleges that Defendant's attempt to hire these employees is completely unlike "the manner in and degree to which

Defendant has hired and trained longshoremen for decades" such that this hiring will disrupt the provision of stevedoring services on Oahu for Defendant.  SAC ¶ 20.  Given the allegation that Defendant's use of these employees would disrupt its business, it appears that these employees would provide no actual benefit to Defendant, *i.e.*, there is no business purpose to hire these employees other than to deny these employees to Plaintiff.

Defendant argues that its sole intent cannot be to harm Plaintiff, because it is undisputed that Defendant will use the new employees, Def.'s Br. 13, and is using Plaintiff's employees now.[6]  Def.'s Reply 10.  While the court recognizes that the SAC does indeed allege at least some use of these employees,[7] nonuse is only one theory of predatory hiring.  *Universal Analytics* contemplates two means of showing predatory hiring -- hiring to harm competition without helping the monopolist, or a clear nonuse in fact.  *Universal Analytics*, 914 F.2d at 1258; *see also Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal &*

---

[6] The SAC includes no statement that Defendant is currently using Plaintiff's employees, even though both parties allude to this fact.  *See* Pl.'s Opp'n 11; Def.'s Reply 10.  For purposes of this motion, the court limits its analysis to the allegations contained in the SAC.

[7] The SAC alleges only that Defendant "will at many times (for about 40% of the time that it operates) not use all of the 108 longshoremen that it is trying to hire from" Plaintiff.  SAC ¶ 19.  Defendant asserts that this statement shows a clear nonuse in fact of employees.  Def.'s Opp'n 8.  The court disagrees.  This sentence could be interpreted to mean that Defendant will fail to use only one employee 40% of the time.  Further, this sentence establishes that for 60% of the time, all employees are being used, which is indeed a use in fact.

*Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1153 (9th Cir. 1997) (referring to *Universal Analytics* as establishing a "two-prong test"). Thus, some use of Plaintiff's employees is not necessarily a bar to Plaintiff alleging that Defendant is hiring these employees to harm the competition without helping it. Indeed, the court finds that the SAC alleges a predatory hiring claim based on the first means -- harm the competition without helping the monopolist. The court therefore finds that the SAC alleges anticompetitive conduct.

### 3.    *Relevant Market*

The antitrust "relevant market" is a necessary element for both of Plaintiff's § 2 Sherman Act claims. The Ninth Circuit recently explained the contours of the antitrust "relevant market" as follows:

> First and foremost, the relevant market must be a *product* market. The consumers do not define the boundaries of the market; the products or producers do. Second, the market must encompass the product at issue as well as all economic substitutes for the product. As the Supreme Court has instructed, "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." [*Brown Shoe v. United States,* 370 U.S. 294, 325 (1962)]. As such, the relevant market must include the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business.

> Third, although the general market must include
> all economic substitutes, it is legally permissible to
> premise antitrust allegations on a submarket.

*Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).

(some citations, quotations, and footnote omitted).

Despite these considerations, "[a]n antitrust complaint nonetheless survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect.  And since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Id.*  However, a complaint may still be "dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Id.*

"To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes -- analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible." *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (citation and quotations omitted).  For example, "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges

17

a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient," and dismissal is warranted. *Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 628 (5th Cir. 2002).

The SAC alleges that the relevant market is "the provision of stevedore services on Oahu. There are no substitutes for having longshoremen load and unload ships in the harbors on this island." SAC ¶ 11. Beyond this allegation, the SAC does not even attempt to explain why this market is appropriate. *See Todd*, 275 F.3d at 200 (noting that dismissal on the pleadings is appropriate where plaintiff has failed "even to attempt a plausible explanation as to why a market should be limited in a particular way"). The SAC includes no facts indicating that the identified market bears any relation to the methodology necessary in defining the relevant market. For example, the SAC alleges no facts that explain why the market is limited to Oahu, such as whether the parties or other competitors (to the extent any exist) provide stevedoring services on other islands or geographic areas. Without any factual allegations to support this market, Plaintiff's assertion is merely "a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hear-Wear Techs., LLC v. Oticon, Inc.*, --- F. Supp. 2d ---, 2008 WL 656001, at *4 (N.D. Okla. Mar.

18

6, 2008) (noting that a plaintiff may support its definition of the relevant market "by factual allegations detailing the distinct nature of the relevant product market, the relevant product's difference from other products, and the relevant product's consumer base"); *La. Wholesale Drug Co. v. Sanofi-Aventis*, 2008 WL 169362, at *7 (S.D.N.Y. Jan. 18, 2008) ("On a motion to dismiss, a plaintiff need only allege a 'plausible' relevant market.").

Plaintiff argues that there is no alternative to utilizing services of stevedores on Oahu, and that the SAC need not state this obvious fact. Def.'s Opp'n 14-15. Plaintiff misses the point. The SAC includes only vague conclusory statements, and the parties' knowledge of the stevedoring industry does not release Plaintiff's obligations to plead facts to support each element of its claims. Without supporting facts, the court cannot determine whether the identified market is indeed "facially unsustainable." Accordingly, the court finds that the SAC fails to allege facts supporting a relevant market.

### 4. *Monopoly Power*

Monopoly power is an element of Plaintiff's monopolization claim, and is defined as the "power to control prices or exclude competitors." *Rebel Oil Co.*, 51 F.3d at 1441. A plaintiff may prove monopoly power through either direct or circumstantial evidence. *Id.* To demonstrate monopoly power by

19

circumstantial evidence, a plaintiff must: "(1) define the relevant market; (2) show

that the defendant owns a dominant share of that market, and (3) show that there

are significant barriers to entry." *Id.* (citations omitted).

    In support of its monopolization claim, the SAC alleges that

Defendant:

> already possesses monopoly power in the relevant
> market.  Its own longshoremen provide an enormous
> amount of stevedore services to Matson Navigation and
> the Australian-New Zealand Consortium, lead by
> Columbus Lines, as well as, on information and belief,
> other shipping companies.  [Defendant] would not
> provide any significantly less amount of those services,
> even it raised prices that it charged for them, i.e.,
> [Defendant] is already able to control output and price in
> the Oahu stevedoring market.

SAC ¶ 13.  The court finds that this allegation consists merely of "labels and

conclusions, and a formulaic recitation of the elements of a cause of action,"

which "will not do." *Bell Atlantic*, 127 S. Ct. at 1965.  Plaintiff must assert some

factual predicate to support its assertion that Defendant enjoys market power in the

relevant market.  Plaintiff has not done so.  *See In re Se. Milk Antitrust Litig.*, ---

F. Supp. 2d ---, 2008 WL 2117159, at *9 (E.D. Tenn. May 20, 2008) ("The

plaintiffs must also provide a sufficient factual predicate to support its allegations

that the defendants enjoy market power in the relevant market."); *Korea Kumho*

20

*Petrochemical v. Flexsys Am. LP*, 2008 WL 686834, at *9 (N.D. Cal. Mar. 11, 2008) ("Although Plaintiff need not necessarily quantify Flexsys' market share with precision, Plaintiff must assert some *facts* in support of its assertions of market power that suggest those assertions are plausible."); *Cimline, Inc. v. Crafco, Inc*., 2007 WL 4591957, at *5 (D. Minn. Dec. 28, 2007) ("Cimline's lone allegation about Crafco's market power -- that Crafco has 'a sufficient share' of the relevant market (Compl. ¶ 36) -- is simply a label, and a 'label . . . will not do.' *Twombly*, 127 S. Ct. at 1964. Instead, Cimline must plead *facts* indicating that Crafco's share of the market is sufficiently high to constitute monopoly power."); *Cargill Inc. v. Budine*, 2007 WL 2506451, at *8 (E.D. Cal. Aug. 30, 2007) (finding that plaintiff failed to assert facts supporting its conclusion of defendant's market share, and thus did not satisfy the plausibility requirement).

Plaintiff argues that it has pled sufficient facts to support the allegation of monopoly power because the SAC alleges that rivals will be barred from entering the stevedoring market, and that existing competitors lack the capacity to expand their output in the market. *See* Pl.'s Opp'n 15-16. The court disagrees. The SAC alleges that "[r]ivals will be barred from entering the stevedoring services market on Oahu and existing competitors lack the capacity to expand their output in the market by supplying the longshoremen they already

employ or by hiring any more longshoremen under the ILWU collective

bargaining agreement." SAC ¶ 21. To the extent understood, this allegation is

merely another conclusory statement, and does not actually suggest the plausibility

of Plaintiff's assertion regarding monopoly power. It is unclear whether "rivals"

and "competitors" refer to other shippers or other companies who provide

stevedoring services. Further, the SAC provides no explanation of the number of

companies that provide stevedoring services or shippers who have their own

stevedores, the relevance of the ILWU collective bargaining agreement, or why

"rivals" and "competitors" cannot enter the market and/or expand their output.

Simply put, the SAC has failed to plead any facts that support the conclusion of

monopoly power. The court therefore finds that the SAC fails to allege facts

supporting monopoly power.

### 5. *Dangerous Probability of Achieving Monopoly Power*

A dangerous probability that Defendant will achieve monopoly power

is an element of Plaintiff's attempted monopolization claim. To demonstrate this

element, "'a plaintiff must: (1) define the relevant market, (2) show that the

defendant owns a dominant share of that market, and (3) show that there are

significant barriers to entry and show that existing competitors lack the capacity to

increase their output in the short run.'"  *E. Portland Imaging Ctr., P.C. v. Providence Health Sys.-Or.*, 2008 WL 2128022, at *1 (9th Cir. May 20, 2008).

As explained above, the SAC fails to allege facts to support the relevant market, monopoly power,[8] barriers to entry, and competitors' lack of capacity to increase output.  Plaintiff must do more than recite that these factors exist, and allege facts showing that such conclusions are plausible.  Accordingly, the court finds that the SAC fails to allege facts supporting a dangerous probability of success.

### 6.      *Specific Intent to Monopolize*

In support of its attempted monpolization claim, the SAC alleges that Defendant "specifically intends to monopolize and injure competition in the relevant stevedoring market."  SAC ¶ 25.

This allegation of specific intent is sufficiently stated to survive a motion to dismiss.  Any additional facts to support this element would likely be in the possession of Defendant.  *See Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1035 (C.D. Cal. 2007) ("At the pleading stage, facts to support [counterclaim] allegations about [plaintiff and third party defendant's] intent are

---

[8] The SAC does not specifically allege that Defendant has a dominant share of the relevant market, and the court assumes that Plaintiff relies on its conclusory allegations regarding monopoly power as establishing dominant market share.

likely in the possession of [those parties] and may be discovered by [defendant] at a later stage in the litigation."). Further, anticompetitive conduct alone can satisfy the specific intent requirement if the conduct "form[s] the basis for a substantial claim of restraint of trade" or is "clearly threatening to competition or clearly exclusionary." *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1309 (9th Cir. 1982); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (stating that unfair tactics can suffice to prove intent to monopolize). As described above, the SAC adequately alleges anticompetitive conduct. Accordingly, the court finds that the SAC sufficiently alleges intent to monopolize.

In sum, the court finds that the SAC has failed to allege facts supporting the relevant market, monopoly power, and dangerous probability of achieving monopoly power, and therefore GRANTS Plaintiff's Motion to Dismiss Counts I and II. It appears that the SAC's deficiencies could be remedied through amendment. "Federal Rule of Civil Procedure 15(a) directs a court freely to grant a party leave to amend its complaint, 'when justice so requires' and 'should be applied with "extreme liberality."'" *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997) (*quoting DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.

24

1987)); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  The court therefore GRANTS Plaintiff leave to amend its SAC.

## B.    State Law Claims

The court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

The remaining claims in Plaintiff's SAC are state law claims for tortious interference with prospective contract and prospective economic advantage (Count III), tortious interference with employment relations (Count IV), and unfair competition (Count V).  Because this action is in its incipiency and only state law issues remain, the court finds that based on the factors listed above it should decline to exercise jurisdiction over Plaintiff's state law claims in the SAC.[9]

---

[9]  This ruling does not affect the court's discretion to maintain jurisdiction over any state claims that Plaintiff may allege in a Third Amended Complaint.  If Plaintiff chooses to file a

(continued...)

# V.  **CONCLUSION**

For the reasons discussed above, the court GRANTS Defendant's Motion to Dismiss Plaintiff's antitrust claims (Counts I & II), and declines to exercise jurisdiction over Plaintiff's state law claims (Counts III-V).  The court further GRANTS Plaintiff leave to amend its Second Amended Complaint by July 7, 2008.  Failure to file a Third Amended Complaint by July 7, 2008 will result in an automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 16, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*, Civ. No. 08-00080 JMS/BMK; Order Granting Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint with Leave to Amend

---

[9](...continued)
Third Amended Complaint that includes state law claims, however, Plaintiff is reminded of *Bell Atlantic's* requirement that Plaintiff plead more than conclusory statements.